UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
IN RE:                                                          CHAPTER 11

LYNN CITRON and                                                 CASE NO.: 08-71442-ast
JEFFREY CITRON,

                          Debtors.
------------------------------------------------------X
LIBERTY MUTUAL INSURANCE COMPANY,
as Fiduciary for the Bankruptcy Estate of
Lynn Citron and Jeffrey Citron, Plaintiff,
v.                                                              ADV. PROC. NO.: 09-08126-ast

THE STATE OF NEW YORK,
BING LI and THE LAW OFFICES
OF BING LI, LLC, and FRANK PAONE, Defendants.

------------------------------------------------------X
APPEARANCES:

William B. Pollard, III, Esq.
David T. McTaggart, Esq.
Kornstein Veisz Wexler & Pollard, LLP
757 Third Avenue
New York, New York 10017
*Attorneys for Liberty Mutual Insurance Company*

John W. Kolwe, Esq.
Jones, Walker, Waechter, Poitevent, Carr
600 Jefferson Street
Suite 1600
P. O. Drawer 3408
Lafayette, Louisiana 70502-3408
*Attorneys for Liberty Mutual Insurance Company*

Neal S. Mann, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271
*Attorneys for State of New York*

## MEMORANDUM OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

### Issues Before the Court

Pending before the Court are cross-motions for summary judgment filed by the Plaintiff, Liberty Mutual Insurance Company as Fiduciary for the Bankruptcy Estate of Lynn Citron and Jeffrey Citron ("Liberty Mutual" and "Plaintiff"), and by Defendant, the State of New York ("NY").  Plaintiff seeks to avoid and recover a $75,000.00 criminal fine paid by Debtor Jeffrey Citron to NY as part of a plea agreement related to several felony counts of insurance fraud, and $14,000.00 of criminal fines paid by Debtor Lynn Citron as part of a plea agreement with NY related to several misdemeanor charges of insurance fraud.

For the reasons herein, this Court grants in part and denies in part, each motion.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (F) and (H), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

### Procedural History

On March 27, 2008, Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Petition Date"). [dkt item 1][1]  At the time this case was filed, Debtor Jeffrey Citron was incarcerated, and Debtor Lynn Citron was serving out a three-year probation term.

On June 2, 2008, Liberty Mutual Insurance Company filed a motion to dismiss the main case and a brief in support thereof. [dkt items 30, 31]  Liberty Mutual asserted, *inter alia*, that Debtors had filed this bankruptcy in bad faith, had failed to disclose all assets, and were ineligible

---

[1] Unless otherwise noted, all references to the docket are in the main case.

for chapter 13 relief under Section 109(e) of the Bankruptcy Code,[2] because their liquidated, unsecured claims approximated $10 million, and their debts to Liberty Mutual, including treble damages and prepetition interest, exceeded $26 million (the "Dismissal Motion").  Liberty Mutual filed a proof of claim asserting unsecured debts in excess of $26 million.  An evidentiary hearing on the Dismissal Motion was scheduled for July 28, 2008. [dkt item 44]  On June 27, 2008, this Court issued an Order directing Debtors to show cause why this case should not be converted to a case under chapter 7, and scheduled an evidentiary hearing thereon, also for July 28, 2008. [dkt item 43]

On July 23, 2008, following a substitution of counsel, Debtors filed a motion seeking to convert the main case from a case under chapter 13 to one under chapter 11 of the Bankruptcy Code. [dkt item 53]  On August 29, 2008, this Court entered an Order converting the main case to a case under chapter 11 of the Bankruptcy Code. [dkt item 65]

On December 15, 2008, Liberty Mutual filed a motion seeking authority to initiate lawsuits on behalf of the bankrupt estate (the "Authorization Motion"). [dkt item 91]  On December 18, 2008, the United States Trustee (the "UST") filed a motion seeking dismissal of the main case (the "UST Dismissal Motion"). [dkt item 92]

On February 11, 2009, following a contested hearing on the Authorization Motion, this Court entered an Order authorizing Liberty Mutual to pursue recovery actions on behalf of the bankruptcy estate (the "Authorization Order"). [dkt item 114]  The UST's Dismissal Motion has been adjourned on several occasions, on consent of the UST, based on progress towards a plan of reorganization in the main case.

On March 24, 2009, Liberty Mutual, with the power vested in it pursuant to the Authorization Order, filed this adversary proceeding as Plaintiff.  NY filed a Rule 12(b)(6) motion

---

[2] Unless otherwise noted, all references to statutory provisions are to the Bankruptcy Code, found under Title 11 of the United States Code.

Memorandum Opinion  - p. 3

to dismiss this adversary proceeding on May 18, 2009, to which Plaintiff responded on June 1, 2009. [adv. dkt items 8, 9]  Supplemental briefs were filed on August 11 and 12, 2009. [adv. dkt items 11, 12]  This Court denied the NY motion to dismiss on August 31, 2009. [adv. dkt item 14]

On July 28, 2009, Debtors and Liberty Mutual filed a motion in the main case seeking to have the Court approve a global settlement between them. [dkt item 133]  On August 26, 2009, this Court entered an Order approving the settlement between Liberty Mutual and Debtors. [dkt item 137]  This settlement was represented as clearing a few of the potential roadblocks between Liberty Mutual and Debtors so that Debtors could confirm a plan of reorganization.

In this adversary proceeding, Liberty Mutual and NY now have each filed motions seeking summary judgment under Rule 7056 of the Bankruptcy Code.  Each has also filed a statement of material facts upon which there is no dispute, in accordance with Local Bankruptcy Rule 7056-1 in the Eastern District of New York. [adv. dkt items 16, 18, 20, 26]  These motions are fully briefed and were taken under submission by the Court.[3]

### Uncontroverted Facts

The following materials facts are not controverted:

1.    On or about June 5, 2007, Debtors were both indicted, along with several others, for alleged involvement in an alleged fraudulent insurance scheme against Liberty Mutual and others.  The indictment, styled as *People of the State of New York against Jeffrey Citron, et al.*, was assigned indictment number 2373/2007 (the "Indictment").

2.    The Indictment accused Jeffrey Citron of 85 felonies, which carried maximum fines

---

[3] For clarification regarding the other three defendants listed in this adversary proceeding: On December 18, 2009, the Court approved a settlement agreement between Liberty Mutual and Defendant Frank Paone [dkt item 28]; on March 5, 2010, Liberty Mutual filed a status letter with the Court indicating it was in settlement discussions with the remaining defendants, Bing Li and the Law Offices of Bing Li [dkt item 31].

of double the amount of any gains from the commissions of the alleged crimes.[4]

3.      The Indictment accused Lynn Citron of 7 felonies, which carried maximum fines of double the amount of any gains from the commissions of the alleged crimes.[5]

4.      Debtors both pleaded guilty to certain counts.  On September 10, 2007, Debtors each allocuted as part of their respective plea agreements.  Jeffrey Citron allocuted to five felony counts, and received an indeterminate sentence of one and two-thirds to five years, along with having to pay a $75,000.00 fine by the sentencing date.  This plea agreement was conditioned upon Jeffrey Citron surrendering his notary license, staying out of trouble between his allocution date and his sentencing date, cooperating with the department of probation so his presentence report could be prepared, and his not engaging in any insurance business prior to his sentencing date.  As part of his plea agreement, Jeffrey Citron also agreed to waive his right to trial on the charges and waived his right to appellate review.  Lynn Citron allocuted to a misdemeanor charge in exchange for which she was to be sentenced to three years' probation, and "in lieu of forfeiture or fines in the total amount of $175,000," agreed to pay $5,000.00 by her sentencing date, and an additional $4,722.00 per month over the duration of her probation, with an agreement to provide the State of New York with a judgment, which could be secured by Debtors' residence in Woodbury, New York.  Lynn Citron also agreed to surrender any insurance licenses held by her or her agency, waived her right to a trial, and waived her right to appellate review.  Lynn Citron also agreed not to travel, other than for work, to New York City, or to visit

---

[4]  The pleadings do not reveal what the maximum incarceration term might have been.
[5]  As with Jeffrey Citron's Indictment, the pleadings do not reveal what the maximum incarceration term might have been for Lynn Citron.

her husband in prison.

5.        After several delays in their sentencing date, Debtors were finally sentenced on December 19, 2007.

6.        Also on December 19, 2007, NY and Lynn Citron entered into a Consent Order, which memorialized her forfeiture of $175,000.00, and provided for her first payment to be due on the sentencing date of December 19, 2007, with monthly payments thereafter of $4,722.22 over the term of her thirty-six months of probation. Lynn Citron further agreed to a confession of judgment, and the indexing of that confession of judgment as a lien against Debtors' residence "should she miss two monthly payments."

7.        Lynn Citron signed an affidavit of confession of December 19, 2007, and paid her initial $5,000.00.

8.        Jeffrey Citron paid his entire $75,000.00 fine on March 25, 2008.  Lynn Citron paid an additional $9,000.00 on March 25, 2008.

9.        The March 25, 2008, payments made by each of Debtors had been due earlier, but the payment date had been extended with the approval of the state criminal court until March 20, 2008.

10.      Debtors filed a Chapter 13 bankruptcy case on March 27, 2008.

11.      Lynn Citron defaulted on her monthly payment obligations, having made only the initial $5,000.00 payment on December 19, 2007, and a $9,000.00 payment on March 25, 2008, representing the payment due for January and February 2008.

12.      On May 16, 2008, the Supreme Court of Nassau County entered a Judgment by

Confession against Lynn Citron, in the amount of $161,015.00, plus postjudgment interest of nine percent per annum.

13.    NY filed a secured proof of claim in the main bankruptcy case on June 27, 2008, claiming a secured debt of $161,015.00.

14.    It is unknown whether or when NY docketed the confession of judgment with the Clerk of either Nassau or Suffolk County.

## Summary of Arguments

Liberty Mutual asserts that the Jeffrey Citron's $75,000.00 March 2008 payment and Lynn Citron's March 2008 $9,000.00 payment (collectively, the "March 2008 Payments") were both preferential payments and therefore avoidable under Bankruptcy Code Section 547(b).  Liberty Mutual further argues that Lynn Citron's December 19, 2007, $5,000.00 payment, along with the Debtors' March 2008 Payments (collectively, the "Transfers"), all constitute fraudulent transfers and, therefore, are subject to avoidance under Bankruptcy Code Section 548(a).

NY, in its cross-motion for summary judgment, asserts that the Debtors received reasonably equivalent value for the Transfers because they avoided long jail sentences, substantial fines, and the significant costs of a criminal trial, and, thus, the Transfers were not fraudulent transfers. NY concedes that the March 2008 Payments are preferences, but argues that the affirmative defense provided under Section 547(c)(1) precludes recovery by Liberty Mutual. [adv. dkt item 20]

## Legal Analysis

## The Standard for Summary Judgment

Pursuant to Rule 56© of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056©, summary judgment should be granted to the moving party if the Court determines that

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (quoting FED. R. CIV. P. 56©).

In considering cross-motions for summary judgment, the court must evaluate the merits of each motion independently of the other. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993); *In re Rodriguez*, 50 B.R. 576 (Bankr. E.D.N.Y. 1985) ("[C]ross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.")

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Anderson*, 477 U.S. at 250 n.4).

If the movant meets his initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (quotation omitted). "There

is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, No. 01 Civ. 1777(DC), 2002 WL 1888716 *4 (S.D.N.Y. Aug. 16, 2002) (citing *Anderson*, 477 U.S. at 249); *see also Anderson*, 477 U.S. at 250 (finding that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

As part of the independent evaluation of cross-motions for summary judgment, the court must draw all reasonable inferences against the party whose motion is under consideration. *Coach, Inc. v. Peters*, 386 F.Supp.2d 495, 497 (S.D.N.Y. 2005).

The parties do not dispute the material facts that each has asserted.  Thus, this Court must determine whether all material facts have been presented to this Court and, if so, whether: (1) the March 2008 Payments are avoidable as fraudulent transfers under Section 548; and (2) NY has demonstrated that the March 2008 Payments are excepted from preference avoidance in accordance with Section 547(c)(1).

### Standards for Avoidance Under Bankruptcy Code Sections 547 and 548

Bankruptcy Code Sections 547 and 548 provide the circumstances under which a preference and a fraudulent transfer can be found to exist and be avoided. 11 U.S.C. §§ 547, 548.  Section 547 of the Bankruptcy Code authorizes either the debtor or the trustee to avoid a transfer which prefers one creditor over similarly situated creditors, and allows the transferee to receive more than it would have received in a Chapter 7 case had the transfer not been made. 11 U.S.C. § 547.  NY has conceded that the elements of a preference under Section 547(b) have been demonstrated by the summary judgment evidence submitted by Liberty Mutual regarding the March 2008 Payments. [adv. dkt item 20, p.5]  Instead, NY focuses its argument on the assertion that the March 2008

Payments to NY should be excepted from avoidability under Section 547(c)(1), which provides a complete defense based on a contemporaneous exchange for new value.

Bankruptcy Code Section 548(a) authorizes either the debtor or trustee to avoid a transfer made for less than reasonably equivalent value within two years prior to the petition date.[6]  11 U.S.C. § 548(a).  The Bankruptcy Code provides that the trustee may avoid transfers or obligations for which the debtor received less than a reasonably equivalent value if the debtor was insolvent or was rendered insolvent by the transfer, and/or intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured. *Id.*

**Section 548 Analysis: Whether a Plea Bargain Resulting in a Reduction in
Jail Time, Fines, and Legal Costs Constitutes Reasonably Equivalent Value**

In  *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the United States Supreme Court stated that the phrase "reasonably equivalent value" contained within Section 548 does not necessarily connote a strictly economic or dollar for dollar analysis.  "One must suspect the language means that fair market value cannot—or at least cannot always—be the benchmark" for determining reasonably equivalent value. *BFP*, 511 U.S. at 537 (internal citations omitted).  In *BFP*, the Supreme Court held that the price received at a regularly conducted, noncollusive foreclosure sale, which is properly conducted under applicable state law, conclusively establishes reasonably equivalent value for purposes of Section 548(a). *See BFP*, 511 U.S. at 537.

In *In re Zerbo*, 397 B.R. 642 (Bankr. E.D.N.Y. 2008), this Court addressed  a Section 548 attack by a trustee against a prepetition divorce property settlement.  In *Zerbo*, by extension of the

---

[6] Prior to the October 17, 2005, amendments to the Bankruptcy Code provided under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the applicable look-back period under § 548(a) was one year. Section 548(a) was amended to provide a two -year look back. This bankruptcy case was filed after the effective date of the relevant BAPCPA amendments.

Case 8-09-08126-ast    Doc 32    Filed 05/06/10    Entered 05/06/10 15:44:14

*BFP* analysis, this Court concluded that reasonably equivalent value for purposes of Section 548(a) could be conclusively established by a divorce decree which divided marital assets, if the division of assets was approved by a matrimonial court and if there is no evidence of extrinsic fraud or collusion among the divorcing parties. *Zerbo*, 397 B.R. at 654.

Very little case law has been found on the precise question posed here:  whether the settlement of criminal litigation constitutes reasonably equivalent value  for Section 548 purposes. This Court believes that *BFP* establishes a framework for analysis of this case as it did for *Zerbo*.

The only two cases cited by NY, both decided well before *BFP*, help illuminate this analysis.   These cases are   *In re Tower Environmental, Inc.*, 260 B.R. 213 (M.D. Fla. 1998), which is similar to this case in many material respects, and in *In re CareerCom Corp.*, 215 B.R. 674 (M.D. Pa. 1997).  *CareerCom* is not quite as similar to this case as *Tower*.

In *Tower*, the debtor, an environmental remediation firm, entered into a plea agreement ("Plea Agreement") with the State of Florida (the "State"), to settle a 45-count indictment against the debtor's predecessor corporation, Consolidated Credit Group, Inc. ("CCG"). *In re Tower Envtl., Inc.*, 260 B.R. at 218-19.  Under the Plea Agreement, CCG agreed to enter pleas of no contest to all of the counts of grand theft in the indictment, and the State agreed to *nolle prosequi* the racketeering and conspiracy charges.  The Plea Agreement included both monetary and nonmonetary conditions.  CCG agreed to pay restitution, a sum comprising the State's cost of the investigation, and a fine, each payable in installments.  Two major stockholders of debtor guaranteed the payments under the Plea Agreement. *Id.* at 219.

In exchange, the State agreed not to pursue the criminal prosecution of CCG, debtor, three entities associated with CCG, and "any officers, directors, shareholders, employees, and agents" of

*Memorandum Opinion  - p. 11*

the named entities. This agreement not to prosecute extended to "matters relating to the factual

basis detailed in the [i]ndictment and any matters presently under investigation." The Plea

Agreement included several nonmonetary provisions and provided for withdrawal from the

agreement in the event of breach by either party, which included the failure to make the required

payments. Under the Plea Agreement, the State was not precluded from pursuing penalties,

restitution, costs, and other relief pertaining to events other than the specific incidents identified in

the indictment. *Id.* at 218-19.

Debtor made all of the required payments. The restitution was paid according to the

schedule established in the Plea Agreement and the fine and the costs of investigation were paid in

advance of the due dates. *Id.* at 220.

An involuntary case under Chapter 7 was filed against debtor on July 20, 1995, after which

debtor consented to an order for relief under Chapter 11, entered on August 24, 1995. Debtor

proposed to liquidate all of its assets in its Chapter 11 case, and the Creditors' Committee filed the

adversary proceeding at issue in the opinion against State of Florida. *Id.* at 221.

The parties agreed that Tower made certain transfers of its property to the State or for the

benefit of the State within one year prior to bankruptcy, and made other transfers more than one

year but less than two years prior to bankruptcy.[7] These transfers were made in satisfaction of

Debtor's obligations under the Plea Agreement. *Tower,* 260 B.R. at 220. The court stated that other

tests of the statutes must be examined to determine reasonably equivalent value if Debtor did not

receive reasonably equivalent value in exchange for incurring the obligation; however, "[if] the

Debtor received reasonably equivalent value in exchange for incurring [and paying] the

---

[7] *Tower* was decided under the pre-BAPCPA § 548 which provided for a one year 'look back' period. The otherwise applicable substantive provisions of § 548 did not change.

obligation[s], then the obligation[s] were not fraudulent [transfers] under any of the tests, and the transfers in satisfaction of the obligation[s], while they may have been preferential, were not fraudulent. *In re Tower Envtl., Inc.*, 260 B.R. at 222-23.[8]

The court also noted that "neither party cited any case authority dealing squarely with the issue of whether obligations incurred or payments made in connection with the settlement of criminal charges are constructively fraudulent within the meaning of § 548(a)(2) of the Bankruptcy Code, and it appears that this issue may not have been addressed in any prior decisions." *Id*. at 223-24.[9]

The *Tower* court applied what it considered the then existing, most analogous cases, and, on the issue of value, stated as follows:

> The value received when the obligations were incurred is found in the resolution of the charges in the indictment. This resolution entailed at least (1) resolving the risk of incurring the substantial liabilities associated with the indictment, (2) avoiding the substantial costs associated with litigation of 45 felony charges, and (3) the possibility that the terms of the Plea Agreement, viewed at the time that the Agreement was entered, could have enabled the Debtor to receive an economic benefit in the future. Value was received for the payments pursuant to the Plea Agreement because they were in satisfaction of the obligations which had been incurred, which is defined as value by § 548(d)(2)(a).

*Id*. at 226.

Having found that value had been received, the inquiry turned to reasonable equivalence. For this, the *Tower* court turned to an economic equivalence model to determine how the amount of the payments compared to the liability facing Tower absent the Plea Agreement. *Id*. at 227-28.  The court noted that the Debtor faced a realistic possibility of conviction, and concluded as follows:

---

[8]  *Tower* did not involve any preference claims.
[9]  This Court notes that *Tower* has not been cited by any other court to date.

> There may be instances in the context of criminal litigation where fines, penalties, or forfeitures are imposed with respect to which a debtor does not receive reasonably equivalent value. However, in this case, considering the factors discussed above, the Court concludes that the Debtor received reasonably equivalent value in exchange for entering the Plea Agreement and incurring the obligations.

*Id.*

Under Florida law, the state trial court had a responsibility to consider whether to accept the Plea Agreement.[10]  The *Tower* court also noted that the Plea Agreement was an arms-length, noncollusive agreement. *Id.* at 228-29.

The court concluded that Tower received reasonably equivalent value in exchange for incurring the obligations of the Plea Agreement, and for making the transfers in payment of the amounts required by the Plea Agreement, including the payments made prior to their due dates, noting all payments were "made in satisfaction of an antecedent debt of equal value." *Id.* at 229-30.

In *CareerCom*, the debtor was the parent corporation of numerous for-profit post-secondary learning institutions and trade schools, during which time the federal Department of Education ("DOE") managed the Department of Education Payment Management System ("DEPMS"), the central repository for payments of federal grants to post-secondary institutions and trade schools. Prior to filing bankruptcy for itself and several subsidiaries, CareerCom received funding from the DEPMS, which funding was paid into a consolidated account managed by CareerCom and from

---

[10] Rule 3.172, Florida Rules of Criminal Procedure, in effect at the time *Tower* was decided, provides that a State trial judge must have certain assurances before accepting a plea of nolo contendere. Before accepting such a plea, the state trial judge must be satisfied that the plea is voluntary and that there is a factual basis for it. Additionally, the trial judge should determine that the defendant understands the complete terms of any plea agreement, including specifically all obligations the defendant will incur as a result. Further, before the trial judge accepts a nolo contendere plea, the judge must determine that the defendant either acknowledges his or her guilt or acknowledges that he or she feels the plea to be in his or her best interest, while maintaining his or her innocence. No plea negotiation is binding until it is accepted by the trial judge formally after making all the inquiries, advisements, and determinations required by Rule 3.172[.]
FLA. R. CRIM. P. 3.172.

which all subsidiaries' payables were paid.  Prior to filing, CareerCom paid fines to the DOE for various record-keeping irregularities.  These payments were made from its commingled bank account in order to remain on DOE's advance payment roster.  Over the same period, however, DOE paid CareerCom $3.3 million in advance funding for its schools.

The court determined that this advance funding constituted new value and, thus, excluded the fines from being recoverable as preferences.  Part of the court's analysis noted that by paying the fines, CareerCom and its subsidiaries could continue to receive advance DEPMS funding, rather than being switched to reimbursement funding, under which the CareerCom entities would have to advance the grants to students and then seek reimbursement from DEPMS.  Reimbursement funding would have also increased CareerCom's administrative costs. *In re CareerCom Corp.*, 215 B.R. at 676-77.

The *CareerCom* court also rejected the Section 548 claims, noting these claims "must fail because all subsidiaries, directly or indirectly, received new value in exchange for the transfers in question." *Id*. at 678.

### The *BFP* and *Zerbo* Analysis Do Not Require That <u>Reasonable Equivalence Be Measured Only By Money</u>

As this court noted in *Zerbo*, the Supreme Court in *BFP* either directed or, at a minimum, gives an imprimatur to courts to consider the "force and function of established institutions of local government" in analysing reasonably equivalent value under Section 548(a). *BFP*, 511 U.S. at 538-40 (internal citations omitted); *Zerbo*, 397 B.R. at 653.

The record before this Court indicates that New York imposes similar requirements to considering and approving plea agreements as Florida did at the time *Tower* was decided.  As such,

the plea bargain process in the criminal context in New York is entitled to the same deference as this Court gave civil divorce proceedings in *Zerbo*. *See Zerbo*, 397 B.R. 642; *see also In re Bledsoe*, 563 F.3d 1106 (9th Cir. 2009)(holding marital dissolution judgment that results from contested divorce proceeding conclusively establishes reasonably equivalent value for § 548 purposes, absent collusion or extrinsic fraud).  Said otherwise, when the State of New York compromises the possible term of incarceration and amount of monetary sanctions for alleged wrongdoing in order to resolve a criminal proceeding, under the watchful eye of a court of competent jurisdiction, the resolution of that proceeding should, too, be treated presumptively as being for reasonably equivalent value.  Here, each plea agreement of Debtors was presided over and accepted by the state court.  Each extension of the time for sentencing and for making any payment was also approved by the state court.

Thus, akin to *Zerbo*, absent extrinsic fraud or collusion among the sovereign and the accused, a plea agreement which is approved by a court of competent jurisdiction, and the performance thereof, conclusively establishes reasonably equivalent value for purposes of Section 548(a).  Here, as there is no evidence or even an allegation of any such fraud or collusion, NY is entitled to summary judgment in its favor on Liberty Mutual's fraudulent transfer claims.

### Section 547 Analysis: Whether a Plea Bargain Resulting in a Reduction in Jail Time, Fines and Legal Costs Constitutes a Contemporaneous Exchange for New Value

The preference analysis requires a different path than the fraudulent transfer analysis.  This case presents the possibly anomalous result that a debtor could plead guilty, avoid jail, pay his or her monetary penalties, then file bankruptcy and have the federal, state or local sovereign stripped of the benefit of its bargain, with no ability to restore the criminal proceeding.  However, the issue

before this Court is not whether that possible result should flow from the Bankruptcy Code; the question for this Court is what result does derive from the Bankruptcy Code.

NY rests its entire preference defense on Section 547(c)(1), which provides as follows:

> (c) The trustee may not avoid under this section a transfer--
> (1) to the extent that such transfer was--
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).  New value is defined under section 547(a)(2) as follows:

> (2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).  As the *Tower* court noted, criminal restitution payments which are not fraudulent transfers may be preferences. *Tower*, 260 B.R. at 223.  As noted above, NY has conceded that the March 2008 Payments satisfy each of the preference elements.

The analysis of the new value defense is different for Lynn Citron than for Jeffrey Citron. Jeffrey Citron made one payment contemporaneous with his sentencing on March 25, 2008, which was his only transfer.  Lynn Citron, however, made one $5,000.00 payment contemporaneous with her sentencing on December 19, 2007, which was outside the preference window, and one payment of $9,000.00 on March 25, 2008.  To the extent Lynn Citron received new value in exchange for agreeing to plead guilty, she received that value on December 19, 2007, when her plea was accepted and her sentence imposed.  NY conceded that Lynn Citron's sentencing date had to be adjourned on several occasions because she claimed she did not have the funds available to pay the initial

$5,000.00 installment, which she ultimately paid on December 19, 2007, when she was sentenced. [adv. dkt item 20, pp. 3-4]  However, the new value defense requires not only new value be received, but that the exchange of the new value for the transfer be intended to be and be in fact a substantially contemporaneous exchange.  *See* 11 U.S.C. § 547(c)(1).

NY argues that the sentencing of Lynn Citron resulted in a credit transaction, and that the new value defense still shelters the payments she was to make subsequent to sentencing, as these were due on a regular schedule. [adv. dkt item 20, pp. 8-10] Even if this Court were to accept that argument, however, the undisputed facts here are that Lynn Citron did not pay according to the agreed schedule.  The $9,000.00 payment she made on March 25, 2008, represented past due payments for the payments due for January and February 2008, which were supposed to be monthly payments of $4,722.22 over the term of her thirty-six months of probation.

Thus, NY cannot prevail on its claim as a matter of law that Lynn Citron's $9,000.00 payment on March 25, 2008, four (4) months after she was sentenced and received the benefit of her plea agreement, and well after the dates she agreed to make payments, was in fact a substantially contemporaneous exchange for new value for the December 19, 2007, plea agreement for purposes of Section 547(c)(1)(B).  Therefore, Liberty Mutual is entitled to recovery of the $9,000.00 paid by Lynn Citron on March 25, 2008.

The question as to Jeffrey Citron is more difficult.  Neither side has provided briefing on whether agreeing to a prison sentence shorter than what the charged offenses could provide and/or reduced fines of less than what the charged offenses could provide constitutes money or money's worth transferred by NY for purposes of Section 547(c)(2).  Further, no summary judgment evidence is before this Court as to the quantitative value of the reduced prison term and/or reduced

fines from which this Court could determine the extent to which NY provided new value, if any. This Court does conclude, however, that if new value was provided under Section 547(a)(2) incident to Jeffrey Citron's plea agreement, the $75,000.00 he paid was intended to be a contemporaneous exchange and was in fact a contemporaneous exchange for purposes of Section 547(c)(1).

Further, neither side has cited the line of cases addressing whether restitution payments are subject to preference recovery. Several courts have held that payments made pursuant to criminal restitution obligations are subject to recovery through chapter 5 avoidance actions. *See, e.g.*, *Smith v. Rogers (In re Castelhano)*, No. 07-1049, 2009 WL 1870956 (Bankr. D.N.H June 24, 2009)(denying motion for summary judgment because "[p]laintiff must prove that the transfers occurred pre-petition under § 547(b) or post-petition under § 549, and that the transfers were of 'an interest of the debtor' or 'property of the estate[.]'"); *Richardson v. The R.B.K. Corp. (In re Tyler)*, 379 B.R. 707, 710-11 (Bankr.W.D. Mich. 2007)(finding trustee proved all elements to establish avoidable preferential transfer under § 547(b) for civil restitution); *Bova v. St. Vincent De Paul Corp. (In re Bova)*, 272 B.R. 49, 53 (Bankr. D.N.H. 2002)(finding no criminal restitution exception to an avoidance action); *Movitz v. Maricopa County (In re Ball)*, 257 B.R. 309, 314 (Bankr. D. Ariz. 2001)(finding that "[u]nlike the discharge exceptions, the preference statute does not treat criminal fines, penalties, forfeitures or restitution any differently than other debts, except as specifically set forth in § 547(c)."); *Zimmerman v. Itano Farms, Inc. (In re Currey)*, 144 B.R. 490 (Bankr. D. Idaho 1992)(finding that the beneficiary of a restitution payment was a creditor and therefore the payment could be recovered as a preference); *Bakst v. Atlantic National Bank (In re*

*Kayajanian)*, 27 B.R. 711 (Bankr. S.D. Fla. 1983)(finding that trustee established an avoidable preference action when debtor executed a promissory note to a bank to comply with a criminal restitution order).

In *Castelhano*, a chapter 7 trustee sought to recover certain pre- and post-petition restitution payments made by the debtor to the victim of his criminal conduct.  In support of the victim's motion for summary judgment, the debtor asserted that avoidance of the restitution payments would lead to an inequitable and unfair result for the debtor. The court took a contrary view, and stated that "excepting restitution obligations from avoidance actions takes money away from the estate and other unsecured creditors. The consequence would leave the unsecured creditors paying for the Debtor's criminal actions."  *Castelhano*, 2009 WL 1870956 at *3.

Again, the issue here is not whether to except criminal fines, penalties and forfeitures from the strictures of the preference provisions of the Bankruptcy Code.   That is a legislative function for Congress to undertake in the crafting of the Bankruptcy Code.  For example, Congress made a policy determination to except certain domestic support obligation payments from avoidance recovery by enacting Section 547(c)(7), which provides an affirmative defense for preferential payments made to the extent such payments were bona fide payments for a domestic support obligation.  No similar exception has been made for criminal fines or restitution.

Similarly, the issue is not whether allowing NY to keep a preferential payment would upset the bargain the State of New York made with Debtors.  That, too, is a legislative function for Congress.

This Court's analysis should not, however, be read as being without regard for Judge

Vaughan's comments in *Castelhano*—that excluding restitution payments from avoidance recovery "would leave the unsecured creditors paying for the Debtor's criminal actions." *Castelhano*, 2009 WL 1870956 at *3.  As noted, this is not an action to avoid restitution payments.

Similarly, the issue before this Court is not whether avoiding any of the Transfers would have the effect of  rewriting the plea agreements, and converting fines and forfeiture paid to NY into restitution paid to Liberty Mutual.  As the parties here have agreed, Liberty Mutual was one of the parties defrauded, resulting in the indictment being brought in the first place.  The plea agreements were, in part, to vindicate the wrong done to Liberty Mutual.[11]  Liberty Mutual has adduced evidence that it holds in excess of 95% of the filed unsecured claims in this case.[12]  Had the plea agreements been structured to provide direct restitution to Liberty Mutual rather than fines or forfeitures paid to NY, and this litigation commenced against Liberty Mutual, a similar avoidance analysis would have to have been conducted.

Thus, a trial is required to determine what the potential maximum prison sentences and monetary fines would have likely been had Jeffrey Citron not pleaded guilty, and the quantitative value of avoiding these potential terms of incarceration and fines, in order to determine what money or money's worth in goods, services, or new credit Jeffrey Citron received in exchange for his plea agreement for Section 547(c)(1) and 547(c)(2) purposes.

---

[11] Of the 92 total charged felonies, 10 related to Liberty Mutual.

[12] This calculation factors in NY as a secured creditor, as it filed a secured claim, presumably based on Lynn Citron's agreement to provide a lien against Debtors residence following a default in payments.  Liberty Mutual asserts actual losses at the hands of the Citrons approaching $10 million.

## **Conclusion**

Summary judgment should be granted in favor of NY on Liberty Mutual's fraudulent transfer claims.  Summary judgment should be granted in favor of Liberty Mutual on its claim to recover the $9,000.00 paid by Lynn Citron on March 25, 2008, as a preference.  Summary judgment should be denied to both parties on the preference claim as to the $75,000.00 paid by Jeffrey Citron.

An Order consistent herewith shall be issued.

**Dated: May 6, 2010**
**Central Islip, New York**

**Alan S. Trust**
**United States Bankruptcy Judge**