UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
IN RE:
LYNN CITRON and                                              CASE NO.: 08-71442-ast
JEFFREY CITRON,                                              CHAPTER 11
                                Debtors.
-------------------------------------------------------X
LIBERTY MUTUAL INSURANCE COMPANY,
as Fiduciary for the Bankruptcy Estate of
Lynn Citron and Jeffrey Citron,

                              Plaintiff,

v.                                                                              ADV. PROC. NO.: 09-08126-ast

THE STATE OF NEW YORK,
BING LI and THE LAW OFFICES
OF BING LI, LLC, and FRANK PAONE,

                              Defendants.
-------------------------------------------------------X

## **MEMORANDUM OPINION AND ORDER**
## **ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment (the "Motion") filed on May 24, 2010, by Plaintiff, Liberty Mutual Insurance Company as Fiduciary for the Bankruptcy Estate of Lynn Citron and Jeffrey Citron ("Liberty Mutual" or "Plaintiff"), against Defendants Bing Li and the Law Offices of Bing Li, LLC (collectively, the "Li Defendants"). [dkt item 40] Also pending is the Opposition to the Motion and Cross-Motion for Summary Judgment (the "Cross Motion") and evidence in support thereof filed by the Li Defendants[1] on June 14, 2010.

---

[1] For clarification regarding the other two defendants listed in this adversary proceeding: On December 18, 2009, the Court approved a settlement agreement between Liberty Mutual and Defendant Frank Paone [dkt item 28]; on May 6, 2010, the Court issued a Memorandum Opinion on the cross-motions for summary judgment filed between Liberty Mutual and the State of New York [dkt item 32], and is contemporaneously herewith issuing a Memorandum Opinion regarding a request by Liberty Mutual for reconsideration, in part, of that decision.

[dkt items 44-47] Liberty Mutual filed an Opposition to the Cross Motion on July 6, 2010. [dkt item 54]

## Issues Before the Court and Summary of Ruling

By the Motion, Liberty Mutual seeks to: (1) avoid and recover a $5,000.00 payment Debtors paid to the Li Defendants on March 26, 2008, as a preference, pursuant to Section 547 of the Bankruptcy Code, or as an improper post-petition payment under Section 549 of the Bankruptcy Code; and (2) avoid three post-petition payments totaling $7,000.00 the Debtors paid to the Li Defendants pursuant to Section 549(a) of the Bankruptcy Code. Liberty Mutual also requests this Court to conform the pleadings to the evidence. In its Opposition and Cross Motion, the Li Defendants object to Liberty Mutual raising the Section 549 claim in the Motion because it was not initially pleaded in the Complaint, and Liberty Mutual neither filed nor asked for leave to file an amended Complaint. For the reasons herein, this Court will allow the pleadings to be conformed to the evidence, grant summary judgment in favor of Liberty Mutual on the Section 549 claims, and deny summary judgment sought by the Li Defendants.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (F) and (H), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## Procedural History

On March 24, 2009, Liberty Mutual filed this adversary proceeding as fiduciary acting on behalf of the estate.[2] Liberty Mutual's Complaint alleges that Debtors paid $15,000.00 to the Li

---

[2] On February 11, 2009, following a contested hearing in the main case, this Court entered an Order authorizing Liberty Mutual to pursue recovery actions on behalf of the bankruptcy estate (the "Authorization

Defendants on March 24, 2008, shortly before filing this bankruptcy case on March 27, 2008, and that such payment constitutes both a preferential transfer and a fraudulent transfer under Sections 547 and 548 of the Bankruptcy Code, as well as a transfer avoidable under applicable provisions of the New York Debtor Creditor Law. [dkt item 1]  Discovery in this adversary proceeding subsequently revealed that the Li Defendants actually received four payments from Lynn Citron totaling $12,000.00; one for $5,000.00 on March 26, 2008 which was delivered pre-petition but which was honored by the Debtors' bank post-petition, and three post-petition payments totaling $7,000.00, which were delivered on April 22, 2008, June 16, 2008, and July 2, 2008.

       Liberty Mutual asserts in the Motion that this Court should conform the pleadings to the evidence before it and deem the Complaint amended.  When the Li Defendants filed the Cross Motion, the Li Defendants asserted, *inter alia*, that all of the payments by Debtors to the Li Defendants were post-petition transactions and as such, Liberty Mutual could not prevail on a Section 547 preference claim.  The Li Defendants assert that the March 26, 2008, payment by Lynn Citron did not clear the Citron account until March 31, 2008, and as such, that transfer occurred post petition.  Additionally, the Li Defendants assert Liberty Mutual cannot raise the Section 549 claim without leave from this Court to amend the Complaint, and that, even if leave to amend was granted, Liberty Mutual would be time barred as to the March and April 2008 payments under Section 549 of the Bankruptcy Code.  In Liberty Mutual's opposition to the Cross Motion, Liberty Mutual concedes that all of the payments were post-petition payments, and thus cannot be brought under Section 547 of the Bankruptcy Code, but asserts that summary judgment should be granted in favor of Liberty Mutual under Section 549.  Liberty Mutual strongly contends this Court may conform its pleadings to deem the Complaint amended. [dkt item 54]

---

Order"). [dkt item 114]

Each party has also filed a statement of material facts upon which there is no dispute, in accordance with Local Bankruptcy Rule 7056-1 in the Eastern District of New York. [dkt items 40-2, 46]

The pleadings now before the Court are extensive, discovery has been comprehensive, and the issues have been exhaustively briefed.

## Uncontroverted Facts

No genuine issue of material facts exist as to the following matters, which are relevant to the Motion and Cross Motion:

1. The Li Defendants represented Debtors prepetition beginning in approximately April 2007 on business related matters, including the representation of Debtors' companies in several lawsuits brought by Liberty Mutual; the Li Defendants continued their representation post-petition through at least August 2008.[3] [dkt item 40-3 ("Pollard Aff.") ¶ 13 & 40-10 ("Citron Aff.") ¶ 4; dkt item 45 ("Li Aff") ¶¶ 5-7].

2. By early 2008, Debtors were delinquent in their payments for the Li Defendants' legal services. [Pollard Aff. Ex. F, *The Li Defendants' Interrogatory Resp. No. 4*]  As of March 27, 2008, the Debtors owed the Li Defendants at least $27,041.34 for legal services. [Citron Aff. ¶ 6 & Exs. G, H, I, J, K & L]

3. On March 24, 2008, Debtor Jeff Citron sold his interest in RAMGO Cab Corp., a taxi medallion company, for $300,000.00. [Citron Aff. ¶ 7]  The following day, Debtor Lynn Citron informed Mr. Li of the sale, and informed him that Debtors would soon make wire

---

[3] In 2006, Liberty filed six lawsuits in the Eastern District of New York against the Debtors and/or companies owned by them. [Citron Aff. ¶ 3] In early 2007, Liberty filed another such lawsuit in the Eastern District of New York, and one more in the Supreme Court of New York. *Id.* Liberty sought in excess of $26 million from the Debtors through these lawsuits and other demands made on the Debtors. [Pollard Aff. ¶ 8]

        transfer payments toward the outstanding legal bills they owed the Li Defendants. She also informed the Li Defendants that the Debtors expected to file for bankruptcy in the "next day or so." [Citron Aff. ¶ 9 & Ex. S; *see also* Pollard Aff. ¶ 4].[4]

4.     The next day, being March 26, 2008, Debtors sent a $5,000.00 check to the Li Defendants, which the Li Defendants deposited in their bank account on March 28, 2008. [Citron Aff. ¶ 7.a & Ex. D] A credit was applied on March 28, 2008, to the outstanding balance owed to the Li Defendants' for prior services in one of the lawsuits brought by Liberty Mutual, namely *Liberty Mutual Ins. Co. v. RPC Leasing, et al.*, 06-Civ.-5706 (ARR) (JO); as of March 1, 2008, Debtors had an overdue balance of $11,351.50 owed to the Li Defendants for that lawsuit. [Citron Aff. ¶ 7.a & Ex. G]

5.     Debtors filed for bankruptcy on March 27, 2008 (the "Petition Date"). [Citron Aff. ¶ 5 & main case dkt item 1] As of that date, they still owed the Li Defendants more than $26,000.00 for past due services. [Pollard Aff. ¶ 11.c & Ex. E]

6.     In the months after filing for bankruptcy, Debtors made additional payments to the Li Defendants totaling $7,000. [Citron Aff.¶ 7.b-d & Exs. N, P & R] These payments were made on or about April 23, 2008, June 16, 2008, and July 2, 2008, and were for legal services that were performed before the Debtors filed for bankruptcy. *Id.* The April payment was for $5,000.00, and the June and July payments were for $1,000.00 each. *Id.* The Li Defendants applied the April payment to Debtors' past-due account for the *Liberty Mutual Ins. Co. v. RPC Leasing* case, and applied the June payment to the past-due account for the *Liberty Mutual Ins. Co. v. Blessinger* case. The Li Defendants' billing

---

    [4] Initially, Debtors did not list the Li Defendants as creditors on the original schedules, but the schedules were amended on August 11, 2008, to include them. [08-71442 dkt item 60] The bar date was April 10, 2009. The Li Defendants did not file a claim.

records do not show to which case the July payment was applied. Each check was deposited in the Li Defendants' bank accounts. [Citron Aff.¶ 7.b-c & Exs. D, M, N, O, P, Q & R]

7. The post-petition payments to the Li Defendants were made using the proceeds of the RAMGO sale. [Citron Aff. ¶¶ 7, 9] The payments did not come from any other third party. *Id*. ¶ 10. Although Lynn Citron suggested to the Li Defendants in July of 2008 that future payments might come from her mother-in-law, Harriet Citron, no such payments were made by Harriet. *Id*.[5]

8. On March 24, 2009, Liberty Mutual filed the Complaint which alleges, *inter alia*, that on or about March 24, 2008, Debtors made a transfer of $15,000.000 to the Li Defendants in "payment of legal fees owed" using proceeds from the RAMGO sale. [dkt item 1 ¶ 20] Liberty Mutual's Complaint asserts this payment was a preferential transfer under Section 547 of the Bankruptcy Code [dkt item 1 ¶ 27], and/or a fraudulent transfer under Section 548, and/or avoidable under New York Debtor and Creditor Law. [dkt item 1 ¶¶ 37, 39]

9. On May 15, 2009, the Li Defendants filed an Answer to the Complaint and denied the allegation of the transfer in the Complaint. [dkt item 7 ¶ 20]

10. On December 21, 2009, the Li Defendants responded to Liberty Mutual's interrogatories and document demands; the Li Defendants produced documents and responsive information regarding their provision of legal services to Debtors and Debtors' payments for such legal services. [Pollard Aff. ¶¶ 12-13; Li Aff. Ex. C-D]

11. As a result of the discovery process, the Li Defendants identified three payments drawn on

---

[5]The Li Defendants believed the payments would come from Lynn Citron's mother-in-law. [Li Aff. ¶ 13, 17]

Memorandum Opinion - p. 6

the bank account of Lynn Citron as follows:

| Check No. | Amount | Dated | Cleared Date |
|---|---|---|---|
| 316 | $5,000.00 | March 26, 2008 | March 31, 2008 |
| 322 | $5,000.00 | April 22, 2008 | April 24, 2008 |
| 105 | $1,000.00 | July 2, 2008 | unknown |

[Li Aff. Ex. H]  A fourth payment of $1,000.00 on June 16, 2008, was also identified in the Li Defendants' December 21, 2009, discovery responses. [Li Aff. ¶ 25]

13. Liberty Mutual acknowledged to the Li Defendants on February 25, 2010, that the total amount Debtor Lynn Citron believed she paid to the Li Defendants between March 2008 and July 2008 was $12,000.00. [Li Aff. Ex. E]

14. Liberty Mutual did not amend the Complaint.

## Discussion

### The Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP"), incorporated by Rule 7056 (c) of the Federal Rules of Bankruptcy Procedure ("FRBP"), summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FRCP 56(c)).

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23.  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, No. 9:06-CV-401(FJS/DEP), 2008 WL 902184 *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4).

If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (quotation omitted). "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, No. 01 Civ. 1777(DC), 2002 WL 1888716 *4 (S.D.N.Y. 2002) (citing *Anderson*, 477 U.S. at 249); *see also Anderson*, 477 U.S. at 250 (finding that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### The Standard for a Cross Motion for Summary Judgment

"When deciding cross-motions for summary judgment, the standard to be applied 'is the same as that for individual summary judgment motions and a court must consider each motion independent of the other.'" *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 CV 3737(VM), 2008 WL 5416379 *3 (S.D.N.Y. 2008)(quoting *Schultz v. Stoner*, 308 F.Supp.2d 289, 298 (S.D.N.Y. 2004).

### The Summary Judgment Standard as Applied to the Section 547 Claim

Liberty Mutual's Complaint and Motion assert a claim that the Debtor's March 26, 2008, payment of $5,000.00 to the Li Defendants on the eve of this bankruptcy qualifies as a

preferential transfer under Section 547(b). Section 547(b)(4) provides in pertinent part that "the trustee may avoid any transfer of an interest of the debtor in property . . . made . . . on or within 90 days before the date of the filing of the petition[.]" 11 U.S.C. § 547(b)(4)(A). Check number 316, dated March 26, 2008, was signed by Lynn Citron for $5,000.00 and paid to the order of Bing Li, Attorney. The check was presented to Citibank on March 28, 2008, and cleared Lynn Citron's bank, Commerce Bank, on March 31, 2008. [dkt item 45, Ex. H]

The United States Supreme Court has held that for purposes of Section 547(b), a transfer by check occurs on the date of honor. *See Barnhill v. Johnson*, 503 U.S. 393 (1992). Here, Commerce Bank honored the initial $5,000.00 check after the Petition Date. The Li Defendants asserted as a defense to the Section 547 claim that since the $5,000.00 check cleared post-petition, it cannot be a preference. Liberty Mutual concedes this in its opposition to the Cross Motion. As such, summary judgment should be granted against Liberty Mutual on its preference claim as to the initial $5,000.00 check. Further, because there was no prepetition payment, summary judgment should also be granted in favor of the Li Defendants on the remaining Section 547 and Section 548 claims.

## **Conforming the Pleadings to the Evidence and Amending the Complaint**

Liberty Mutual asks the Court to conform the pleadings to the evidence and deem the Complaint and the Motion amended such that the $5,000.00 payment is now the subject of a Section 549(a) claim, along with the $7,000.00 in post-petition payments.

The question before this Court is whether Liberty Mutual can now assert claims under Section 549 via a motion for summary judgment, given that such claims were not pleaded in the Complaint. Liberty Mutual neither filed an amended Complaint nor requested leave to amend its Complaint. The Li Defendants object to Liberty Mutual raising the Section 549 claim without
Memorandum Opinion - p. 9

formally seeking leave to amend the Complaint, object to the Court deeming the Complaint amended, and assert they were without notice of such claim and would be unduly prejudiced by the Court doing so.  However, the Court finds that justice requires the pleadings be amended to conform to the evidence, that the Li Defendants would not be prejudiced by the amendment, deems the Complaint amended to include the Section 549 claims to recover the $12,000.00, and determines that such amendment will relate back to the date the Complaint was filed, which is March 24, 2009.

*Amending the Liberty Mutual Pleadings*

The Li Defendants argue Liberty Mutual may not raise the Section 549 claim for the first time in its Motion.  However, Second Circuit case law and Rule 15 of the Federal Rules of Civil Procedure ("FRCP"), which is incorporated by Rule 7015 of the Federal Rules of Bankruptcy Procedure ("FRBP"), support amending the Complaint.  The undisputed facts presented by the summary judgment pleadings provide the basis to deem the Complaint amended to conform to the evidence, as authorized by FRCP 15(b). *See Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993).  "The function of the pleadings is to give opposing parties notice of the facts on which the pleader will rely, and, in the absence of prejudice to the opposing party, the court may allow the pleadings to be amended to conform them to the evidence at any time, even after judgment." *Van Alstyne v. Ackerley Group, Inc.*, No. 00-9340, 2001 WL 540379, *155 (2d Cir. May 21, 2001); *see also* FED. R. CIV. P. 15(b).[6]  "[W]hen deciding a motion for summary judgment the court may

---

[6] (b) Amendments During and After Trial.

(1) Based on an Objection at Trial. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

(2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties'

evaluate not just the issues presently tendered by the pleadings but those which can reasonably be raised in an amended pleading." *In re Schwartz*, 36 B.R. 355, 357 (Bankr. E.D.N.Y.1984). Thus, an issue raised for the first time in a motion for summary judgment may start the amendment process. *See In re Bennett Funding Group, Inc*., 220 B.R. 743, 752-53 (Bankr. N.D.N.Y. 1997); *see also Seabord Terminal Corp. v. Standard Oil Co.*, 104 F.2d 659 (2d Cir.1939).

First, the Court finds that Liberty Mutual having raised the additional claim for relief under Section 549 and having made such request for relief in the Motion was reasonable. After the initial filing of the Complaint and the Answer, the parties commenced discovery. The Li Defendants did not respond to Liberty Mutual's interrogatories until December 21, 2009, and it was not until late February 2010 that the discovery process revealed the actual transfers, the dates, and amounts, totaling $12,000.00. Liberty Mutual filed its Motion approximately three months later, which the Court finds reasonable. Liberty Mutual is acting as the estate fiduciary, was not able to commence this action before February 11, 2009, when it was authorized to act, and was not in direct possession of the Citrons' bank account information when this case was commenced.

The Court also notes that in an email exchange between the parties on February 26, 2010, the Li Defendants requested that, if Liberty Mutual were to file a motion for summary judgment, it would take into consideration that the Defendant Li would be on a family vacation for about two weeks from March 25 until April 8. [dkt item 45-5, Ex. E]  Liberty Mutual complied.

Next, FRCP 15 authorizes the Court to allow pleadings to be amended to conform to the evidence if such amendment will not prejudice the other party. *See* FED. R. CIV. P. 15(b). Here,

---

        express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may
        move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and
        to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

FED. R. CIV. P. 15(b).

the Li Defendants cannot claim surprise or prejudice by Liberty Mutual's additional claim for relief brought under Section 549. The Complaint put the Li Defendants on notice that Liberty Mutual was seeking to recover $15,000.00 in avoidable transfers allegedly paid to the Li Defendants. Liberty Mutual's Interrogatories during the discovery process also put the Li Defendants on notice of the particular transfers at issue. The Li Defendants knew at the time the Complaint was filed that they had received payments from the Debtors, and were put on notice by the Complaint that Liberty Mutual was seeking the avoidance of such transfers. The Li Defendants' defense to the original claims was not that they had not received any payments; rather, their defense was that they were paid post-petition, and that they received payments in the ordinary course of business and/or for new value, under Bankruptcy Code Section 547(c)(2) and/or (c)(4). Thus, the Court is not persuaded by the Li Defendants' contention that it did not have notice of the possibility of liability to the Citrons' bankruptcy estate. It is also worth noting that the amended claims for $12,000.00 seek less than the $15,000.00 sought in the original claims. Thus, the amendment does not prejudice the Li Defendants.

*Relation Back*

The Li Defendants argue that the request to amend is futile because the statute of limitations under Section 549 of the Bankruptcy Code bars the avoidance claims for the post-petition payments to the Li Defendants. Section 549 of the Bankruptcy Code provides that an action "may not be commenced after the earlier of . . . two years after the date of the transfer sought to be avoided." 11 U.S.C. § 549(d)(1). FRCP 15(c), as incorporated by FRBP 7015(c), allows the "amendment to the pleading to relate back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out–or attempted to be set out–in the original pleading[.]" FED. R. CIV. P. 15(c)(1)(B). Here,

Liberty Mutual sought to avoid payments of $15,000.00 in the Complaint, which was filed on March 24, 2009. All of the payments at issue arise out of the Li Defendants' representation of the Debtors prior to the Petition Date. Thus, the Section 549 claims should and will relate back to March 24, 2009. All of the payments under the Section 549 claim, therefore, fall within the prescribed two-year limitation period.

### The Motion for Summary Judgment as Applied to the Section 549 Claims

Next, the Court will address the Motion as to the Section 549 claims. Section 549 of the Bankruptcy Code has no affirmative defenses relevant here. In its Answer and Cross Motion, the Li Defendants attempt to assert that the funds used to pay them were actually paid by Debtor Lynn Citron's mother-in-law, or that the funds were "earmarked" from the sale of RAMGO for payment to the Li Defendants for its pre-petition legal services.

The evidence before the Court, however, does not support either assertion. The checks were drawn on the account of Lynn Citron. [Li Aff. Ex. H] Bing Li's affidavit states that he believed the mother-in-law would pay the legal bills for Debtors. To rebut this assertion, Liberty Mutual submits a deposition testimony of Harriet Citron, mother-in-law, in which she claims she paid some of the bills of the Debtors but not legal bills [dkt item 54-2], and the affidavit of Lynn Citron in which she states none of the payments to the Li Defendants came from funds provided by Harriet Citron. [Lynn Aff. ¶ 10] Thus, there is no genuine issue of material fact as to the source of the payments to the Li Defendants—all payments were paid by Lynn Citron.

The evidence before this Court clearly shows that the Li Defendants received four post-petition payments for a total of $12,000.00. These payments were made with funds drawn on the account of Debtor Lynn Citron, which is property of this bankruptcy estate under Sections 541 and 1115 of the Bankruptcy Code. 11 U.S.C. § 541; § 1115(a). Section 1115(a) renders all

property acquired post-petition, including earnings, as property of the bankruptcy estate of individual Chapter 11 debtors. 11 U.S.C. § 1115(a). Debtors did not receive Court authority to use property of the estate to pay the Li Defendants. These payments were for pre-petition debts and, as such, the Li Defendants were creditors who were improperly paid.

Bing Li's affidavit alludes to some post-petition representation of Debtor Jeffrey Citron [Li Aff ¶ 18]. However, the Li Defendants have not been retained by Order of this Court to represent Debtors under Section 327 of the Bankruptcy Code, and as such, are not entitled to payment from the estate for professional services rendered post-petition. *See* 11 U.S.C. § 327.

Further, as an attorney, Defendant Bing Li knew or should have known when he received the payments that the receipt of funds from Debtors was a post-petition transaction not allowed by the Bankruptcy Code.

## **Summary of Ruling**

The Court finds and Orders the following:

1. Justice requires that under FRCP 15, as incorporated by FRBP 7015, leave to amend be granted and the Complaint be deemed amended to include the relief requested under Section 549 of the Bankruptcy Code to recover the $12,000.00 paid to the Li Defendants.

2. The amendment relates back under FRCP 15(c), as incorporated by FRBP 7015(c), to March 24, 2009, the date the Complaint was filed.

3. All four payments from Debtors to the Li Defendants are improper post-petition transfers.

4. The Li Defendants knew or should have known that they could not receive post-petition payments without authority of the Court.

5. No evidence before this Court demonstrates any source of the funds other than property of this bankruptcy estate.

6.  No defenses are available to the Li Defendants under Section 549 of the Bankruptcy Code.

7.  The Li Defendants are not professionals retained by the estate, and as such, payments to them could not be made from property of the estate.

Accordingly, it is hereby

ORDERED, that Liberty Mutual's Motion is granted; Liberty Mutual is awarded judgment in the amount of $12,000.00 against the Li Defendants, plus post-judgment interest at the federal rate; and it is further

ORDERED, that the Li Defendants' Cross Motion is denied; and it is further

ORDERED, that Liberty Mutual submit a partial judgment in conformity herewith within fourteen (14) days of entry hereof.

**Dated: July 23, 2010**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**