UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
IN RE:                                                          CHAPTER 11
LYNN CITRON and                                                 CASE NO.: 08-71442-ast
JEFFREY CITRON,

                                Debtors.
-------------------------------------------------------X
LIBERTY MUTUAL INSURANCE COMPANY,
as Fiduciary for the Bankruptcy Estate of
Lynn Citron and Jeffrey Citron,

                                Plaintiff,
v.                                                              ADV. PROC. NO.: 09-08126-ast

THE STATE OF NEW YORK,
BING LI and THE LAW OFFICES
OF BING LI, LLC, and FRANK PAONE,

                              Defendants.
-------------------------------------------------------X

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO RECONSIDER

### Issue Before the Court

Pending before the Court is the Motion (the "Motion") filed by Plaintiff, Liberty Mutual

Insurance Company as Fiduciary for the Bankruptcy Estate of Lynn Citron and Jeffrey Citron

("Liberty Mutual" and "Plaintiff"), asking this Court to reconsider, in part, this Court's

Memorandum Opinion and Order (the "Opinion"). [dkt item 36]; *Liberty Mutual Ins. Co. v. N.Y.*

*(In re Citron)*, No. 09–8126-ast, 2010 WL 1849378 (Bankr. E.D.N.Y. May 6, 2010).  For the

reasons herein, the Motion is denied.

By way of background,[1] in this litigation, Liberty Mutual seeks to avoid and recover a

$75,000.00 criminal fine paid by Debtor Jeffrey Citron to Defendant, the State of New York

---

[1] An in-depth factual history of this case and the adversary proceeding may be found in the Opinion.

("NY"), as part of a plea agreement related to several felony counts of insurance fraud, and

$14,000.00 of criminal fines paid by Debtor Lynn Citron as part of her plea agreement with NY

related to several misdemeanor charges of insurance fraud.  Liberty Mutual asserts that Jeffrey

Citron's $75,000.00 payment and Lynn Citron's $9,000.00 payment made on the eve of this

bankruptcy filing (collectively, the "March 2008 Payments") were both preferential payments

avoidable under Bankruptcy Code Section 547(b).  Liberty Mutual further argues that Lynn

Citron's December 19, 2007, $5,000.00 payment, along with the March 2008 Payments, all

constitute fraudulent transfers avoidable under Bankruptcy Code Section 548(a).  NY conceded

the elements of a preference were established, asserted the affirmative defense of

contemporaneous exchange for new value given to the Debtors pursuant to Section 547(c)(1)[2] of

the Bankruptcy Code, and denied the fraudulent transfer claims.

In the Opinion, this Court, *inter alia*, granted summary judgment in favor of NY on

Liberty Mutual's fraudulent transfer claims, granted summary judgment in favor of Liberty

Mutual on its preference claim as to Lynn Citron's March 2008 $9,000.00 payment, and denied

summary judgment to both parties on the preference claim as to the $75,000.00 paid by Jeffrey

Citron.

By the Motion, Liberty Mutual ask this Court to reconsider its denial of summary

judgment regarding its claim that the $75,000.00 payment made by Jeffrey Citron was a

---

[2]  Section 547(c) provides as follows:
> The trustee may not avoid under this section a transfer--
> (1) to the extent that such transfer was–
> (A) intended by the debtor and the creditor to or for whose
> benefit such transfer was made to be a contemporaneous
> exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).

preference.[3]  Specifically, Liberty Mutual argues that Jeffrey Citron irrevocably received the

benefit of his plea bargain when he was sentenced in December 2007, which is the same time

that Lynn Citron was sentenced, and, therefore, his $75,000.00 payment in March 2008 was a

preference, just as Lynn Citron's $9,000.00 payment in March 2008 was a preference.  In the

Opinion, this Court stated:

> Thus, NY cannot prevail on its claim as a matter of law that Lynn Citron's
> $9,000.00 payment on March 25, 2008, four (4) months after she was
> sentenced and received the benefit of her plea agreement, and well after the
> dates she agreed to make payments, was in fact a substantially
> contemporaneous exchange for new value for the December 19, 2007, plea
> agreement for purposes of Section 547(c)(1)(B).  Therefore, Liberty Mutual
> is entitled to recovery of the $9,000.00 paid by Lynn Citron on March 25,
> 2008.

[dkt item 32, pp. 17-18]; *Liberty Mutual Ins. Co. v. N.Y. (In re Citron)*, 2010 WL 1849378 at *8-

9.  Because NY rests its entire preference defense on Section 547(c)(1), the issue on

reconsideration is when Jeffrey Citron irrevocably received the benefit of his plea bargain, and

whether this Court overlooked controlling decisions or data when it denied Liberty Mutual's

motion for summary judgment regarding the $75,000.00 March 2008 payment.

## <u>Analysis</u>

Generally, motions for reconsideration are not granted unless "the moving party can

point to controlling decisions or data that the court overlooked"—matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court. *Rafter v. Liddle*, 288

---

[3] The Motion was filed on May 19, 2010. This Court entered an Order directing that a response be filed by June 2, 2010. [dkt item 37]  NY filed a timely response. [dkt item 41]  Liberty Mutual requested leave to file a reply, which was granted.  Liberty Mutual filed a timely reply on June 7, 2010. [dkt item 43] The Court then entered an Order establishing a deadline of July 2, 2010, for NY to file a surreply regarding whether Jeffrey Citron's plea bargain and sentence were conditioned upon his paying the $75,000.00 fine, and the state law implications of Jeffrey Citron not paying his $75,000.00 fine. [dkt item 48] NY timely filed its supplemental brief. [dkt item 53]

Fed. Appx. 768, 769 (2d Cir. 2008)(citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d

Cir. 1995)); *see also Ramratan v. N.Y. City Bd. of Elecs.*, No. 06-cv-4770, 2006 U.S. Dist.

LEXIS 64644, at *3 (E.D.N.Y. Sept. 11, 2006)(citing *JP Morgan Chase Bank*, 322 F. Supp.2d

353, 354 (S.D.N.Y. 2004)).  Liberty Mutual bears the burden of establishing that there were

controlling decisions or data that the court overlooked which might reasonably be expected to

alter the conclusion reached by the court.  Liberty Mutual has not met that burden.

 Liberty Mutual asserts that Jeffrey Citron received the benefit of his bargain and his "new

value" on December 19, 2007, when he was sentenced, not on March 25, 2008, when he made

the $75,000.00 payment.  Liberty Mutual further asserts that NY could not have "upended" the

sentence imposed on Jeffrey Citron on December 19, 2007, and that NY had no power to seek to

resentence him based on the failure to pay his fine. *See* N.Y. CRIM. PROC. ("CPL") §§ 420.10(5),

420.10(6) (McKinney 2005).  Further, Liberty Mutual asserts that NY has limited rights to seek

to impose an additional sentence of up to one year on a recalcitrant defendant who is sentenced

to pay a criminal fine, has the ability to pay, but fails to do so. *See* CPL § 420.10. [dkt item 43,

pp. 2-3]  Thus, Liberty Mutual asserts, if the payment were not a condition of his plea bargain,

Jeffrey Citron would have received his "new value" when he was sentenced, and, therefore, the

$75,000.00 payment should have been avoided as a preference.

 This Court rejects Liberty Mutual's analysis of New York law.  NY has established that

Jeffrey Citron's plea bargain was conditioned on his payment of the $75,000.00, and that his

failure to pay the $75,000.00 could deprive him of the benefit of the bargain he reached as part

of the plea agreement.

 During the plea colloquy undertaken on September 10, 2007, as part of the plea-bargain

process, NY stated Jeffrey Citron's plea as follows:

> The promise is that Mr. Citron will be receiving a promised sentence of 20 months to five years, which works out to one and two-thirds years to five years, **plus a $75,000 fine, which is to be paid by sentencing upon which there are no adjournments to be requested or to be provided absent of [sic] showing of medical necessity by Mr. Citron**. He has to waive his right to appeal his plea and sentence, and he has to surrender his Notary Public license.

[dkt item 53-1, p.12 (emphasis supplied)]   The court repeated the understanding of the plea agreement, stating:

> [T]he sentence will be one and two-thirds to five years **plus the $75,000 fine to be paid as of the sentence date**, surrender of any notary license, and a final date to the extent that it is possible to predict this subject to any medical issue, on December 7th, and also an appeal waiver. Is that basically the agreement?

[dkt item 53-1, p. 24 (emphasis supplied)]   Jeffrey Citron's lawyer responded, "Yes, your Honor." *Id.*

The state court explained to Jeffrey Citron on several occasions that his compliance with the conditions of the agreement was required to enter the plea and impose the sentence. [dkt item 53-1, pp. 29-30]  The court explained to Jeffrey Citron that "once the plea is entered and the sentence imposed, subject to [his] complying with the conditions of this agreement, in the meantime that will be a final resolution of the case." *See id.*  Jeffrey Citron acknowledged that he understood the terms of this agreement. [dkt item 53-1, pp. 28-30]

When Jeffrey Citron appeared in court on the agreed upon date of December 19, 2007, he was not prepared to pay the fine.  Rather than adjourn the sentencing date, the state court responded by proceeding to sentence and incarcerate him.  However, the state court did not vary the requirement that the $75,000.00 fine be paid as a condition of his plea agreement, other than

adjourning the payment date, ultimately to February 28, 2008.[4]

The United States Supreme Court has recognized that the basis for a plea agreement is an exchange of promises that must be satisfied. *See Santobello v. New York*, 404 U.S. 257, 262 (1971).  Under applicable NY law, when payment of a fine is an integral part of a plea agreement, the court must be certain that the defendant is aware of this condition, because the failure of the defendant to comply with the condition of payment of the fine can result in the plea agreement being rescinded, or subject the defendant to additional incarceration and other penalties.  When a sentencing court fails to advise the defendant at the time of the plea that his sentence, as part of the plea agreement, could include a fine, the appellate court can vacate the sentence because the "defendant was denied the benefit of his plea bargain." *People v. Lafferty*, 875 N.Y.S.2d 395, 395 (N.Y. App. Div. 4th Dep't 2009) (ordering the county court to either impose the sentence as promised or to give defendant the opportunity to withdraw his plea).

When a fine is imposed on a defendant for a felony, the state court judge retains the discretion to imprison the defendant for up to one year until the fine is satisfied. CPL §420.10(3), (4) (McKinney 2005); *see also People v. Shields*, 656 N.Y.S.2d 486, 486 (N.Y. App. Div. 3d Dep't 1997) (vacating defendant's sentence of probation and directing that defendant be imprisoned for a maximum of one year or until the fines imposed as a requirement of sentencing and a condition of probation were satisfied).  The state may also seek to collect the fine in a civil action, regardless of whether the defendant was imprisoned for failure to pay such fine. CPL

---

[4]  The requirement that the $75,000.00 be paid of the at the time of sentencing in part differentiates Jeffrey's sentence from Lynn's.  NY conceded that Lynn Citron's sentencing date had to be adjourned on several occasions because she claimed she did not have the funds available to pay the initial $5,000.00 installment, which she ultimately paid on December 19, 2007, when she was sentenced.  NY argues that the sentencing of Lynn Citron resulted in a credit transaction as to the remainder of her fine. NY, however, did not assert that her post-sentencing payments were a condition to her being sentenced and receiving the benefit of her plea agreement.

§420.10(6).

In addition, after a sentence is imposed, and even after the defendant has been incarcerated, resentencing is possible, if certain conditions are met.  "Where the court imposes a fine . . . the sentence may provide that if the defendant fails to pay the fine . . . in accordance with the direction of the court, the defendant must be imprisoned until the fine . . . is satisfied." CPL §420.10(3).  A defendant unable to pay the imposed fine may apply to the court to be resentenced.  CPL § 420.10(5).  If the court finds the defendant is unable to pay, it must take any one of the following actions: adjust the terms of payment; lower the amount due; revoke the payment portion of the sentence; or revoke the entire sentence and resentence the defendant. *Id.* Defendants who are able to pay the fine or restitution, but fail to do so, are subject to an additional prison sentence until the amount due is satisfied. CPL § 420.10(3), (4); *see also People v. Amorosi*, 96 N.Y.2d 180, 184 (N.Y. 2001) (holding that when probationer refuses to pay restitution but has the ability to pay, "the State is justified in revoking probation and using imprisonment as an appropriate penalty for the offense"); *People v. Vasquez*, 903 N.Y.S. 2d 22, 22 (N.Y. App. Div. 1st Dep't 2010) (revoking probation and imposing prison sentence based on defendant's willful failure to make good faith efforts to pay restitution as agreed to as part of the plea bargain).

However, sentences generally cannot be changed once a defendant is incarcerated and begins to serve the sentence. *See* CPL § 430.10; *see also People v. Williams et al.*, 14 N.Y.3d 198, 212 (N.Y. 2010).  NY concedes that, once Jeffrey Citron began to serve his sentence in prison, the prejudice to him would likely have been too great to then undo the plea bargain and restore the status quo. [dkt item 53]; *see also People v. Singletary*, 448 N.Y.S.2d 394, 397 (N.Y.

Crim. Ct. 1982) (denying the state's application to set aside sentence and resentence according to the negotiated plea because the defendant had already been imprisoned for five months and "vacature ignores a possibility of a not guilty verdict").  However, that does not mean that Jeffrey Citron would have escaped any additional penalty had he never paid the $75,000.00 fine.

Liberty Mutual acknowledged in its reply brief in support of its Motion that NY could have petitioned the state court to imprison Jeffrey Citron  for up to an additional year until he paid the $75,000.00 fine. [dkt item 43,  pp 2-3]  In *People v. Bertucci*, 506 N.Y.S.2d 399 (N.Y. Crim. Ct. 1986), when the defendant was sentenced to imprisonment and ordered to make restitution, the court stipulated that the defendant would be subject to further incarceration if he failed to make restitution, as provided in CPL Section 420.10(3) and (4) and Penal Law § 60.27. *Bertucci*, 506 N.Y.S.2d at 400; *see also, e.g.*, *People v. Stevens*, 838 N.Y.S.2d 701, 703 (N.Y. App. Div. 3d Dep't 2007) (holding that because defendant breached the conditions of his plea agreement after pleading guilty and prior to sentencing, the county court was not bound to sentence defendant per the previous agreement); *People v. Johnson*, 680 N.Y.S.2d 196, 196 ((N.Y. App. Div.1st Dep't 1998) (affirming sentencing court's revocation of the original sentence promise in the plea agreement because of defendant's violation of at least two conditions of the agreement).

 Thus, although here Jeffrey Citron's agreement to serve an indeterminate sentence of twenty-to-sixty months likely could not have been vacated, he could have been sentenced to up to one additional year in prison had he not paid the $75,000.00 fine.  Thus, NY has demonstrated that, to the extent new value was received by Jeffrey Citron for his guilty plea, the length of his prison sentence, even though for an indeterminate period, was not fixed and irrevocable until he

paid the $75,000.00 fine.

Based thereon, Liberty Mutual has failed to meet its burden of establishing that the court overlooked controlling decisions or data which might reasonably be expected to alter the conclusion reached by the Court. For those reasons, the Motion should be denied. Accordingly, it is hereby

ORDERED, that the Motion to reconsider is DENIED.

**Dated: July 23, 2010**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**